# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

           Plaintiff,

   v.                                             Case No. 22-CR-92

COLETTE MAHAN,

           Defendant.

## ORDER AND REPORT & RECOMMENDATION

**1.    Procedural History**

On April 28, 2022, the grand jury returned a ten-count indictment charging Colette A. Mahan with one count of Interstate Travel and Use of Facilities in Interstate Commerce to Carry On a Prostitution Business in violation of 18 U.S.C. § 1952(a)(3); one count of Sex Trafficking of a Child in violation of 18 U.S.C. § 1591(a)(1) and (b)(2); four counts of Sex Trafficking by Force, Fraud, or Coercion in violation of 18 U.S.C. § 1591(a)(1) and (b)(1); and four counts of Interstate Transportation for Prostitution in violation of 18 U.S.C. § 2421(a). (ECF No. 1.) On August 11, 2022, the grand jury returned a superseding indictment, adding one count of Sex Trafficking of a Child by

Force, Fraud, or Coercion in violation of 18 U.S.C. § 1591(a)(1), (b)(1), (b)(2), and (c). (ECF No. 26 at 11.)

On March 9, 2023, Mahan filed a motion to dismiss count one of the indictment. (ECF No. 42.) Rather than respond to that motion, the government instead moved for leave to dismiss without prejudice count one of the indictment pursuant to Rule 48(a) of the Federal Rules of Criminal Procedure. (ECF No. 46.) Accordingly, the court will recommend that the government's motion for leave to dismiss count one without prejudice be granted and that Mahan's motion to dismiss count one of the indictment be dismissed as moot.

Also on March 9, 2023, Mahan filed a motion to suppress the custodial statement she gave to law enforcement officers following her May 5, 2022, arrest. (ECF No. 43.) Neither Mahan nor the government requested an evidentiary hearing for that motion. For the reasons that follow, the court will recommend that Mahan's motion to suppress be denied.

**2.    Facts**

On May 5, 2022, Mahan was arrested and taken to an interview room at the Waukesha County Sheriff's Office for interrogation. (ECF Nos. 43 at 1; 45 at 2.) FBI Special Agent Blake Shubert and Task Force Officer Anna Ojdana conducted the

2
Case 2:22-cr-00092-BHL    Filed 04/26/23    Page 2 of 12    Document 53

interrogation, which was both audio and video recorded.[1] (ECF No. 45 at 2.) After the agents introduced themselves to Mahan, Shubert read Mahan her *Miranda* rights from a standardized form and asked if she consented to talk with them. (Ex. A at 26:42-27:12.) Mahan responded, "I, I guess so!" and forced a nervous laugh. (Ex. A at 27:10.)

Shubert then gave Mahan a *Miranda* form and explained, "So, if you do [consent], you just have to read that [the *Miranda* form] for me and sign." (Ex. A at 27:17-20.) Mahan paused to read the form and then—with a puzzled look on her face—asked, "Well, what, are you guys gonna go get me a lawyer?"[2] (Ex. A at 27:20-24.) Shubert responded, "No." (Ex. A at 27:25.) Mahan replied, "Ohh!" (in a tone suggesting that Shubert's answer had clarified a point of confusion), immediately reached for the pen in Shubert's hand, signed the form, placed the pen back in front of Shubert, and folded her hands on the table in front of her. (Ex. A 27:27-28.) Shubert, while making eye contact with Mahan, explained, "You have the right to one [a lawyer] if you want one, so just want to make that clear." (Ex. A at 27:35-27:38.) Mahan nodded and, with her hands still folded on the table, raised her thumbs while keeping her other fingers interlaced to confirm her understanding. (Ex. A at 27:38.)

---

[1] A copy of the full interrogation was provided to the court to aid in its consideration of Mahan's motion to suppress. Timestamp citations to that recording will be made to "Ex. A."

[2] The precise wording of Mahan's question is ambiguous. While Mahan says she asked, "Well, what, are you guys gonna go get me a lawyer?" (ECF No. 43 at 1), the government has it as, "*Or* what—you guys gonna go get me a lawyer?" (ECF No. 45 at 3 (emphasis added).) To avoid the need for an evidentiary hearing—at which the court would seek to clarify the precise wording of Mahan's question through testimony from Mahan, Shubert, and Ojdana—the court will assume Mahan's version is correct for purposes of the present motion.

Shubert then passed Mahan's signed *Miranda* form to Ojdana as he stated, "Witness." (Ex. A at 27:42-45.) Ojdana signed the bottom portion of the *Miranda* form, indicating that she was bearing witness to Mahan's waiver. (Ex. A 27:50-18:05.) Shubert and Ojdana then proceeded with the interrogation, and Mahan gave a statement without an attorney present.

**3.     Analysis**

Mahan argues that the custodial statement should be suppressed for two reasons: First, she argues that the interrogation should have stopped when she asked, "Well, what, are you guys gonna go get me a lawyer?" contending that the question was a clear and unequivocal expression of a present desire for counsel. (ECF No. 43 at 4-7.) Even if her question was not a clear invocation of her right to counsel, Mahan argues that her custodial statement should nevertheless be suppressed because she did not knowingly and intelligently waive her right to counsel. (ECF No. 43 at 7-9.)

**3.1.     Invocation of Right to Counsel**

In *Miranda v. Arizona*, the Supreme Court held that, before initiating custodial interrogation, law enforcement must advise a suspect of her right to consult with an attorney and to have counsel present during the interrogation. 384 U.S. 436, 469-73 (1966). If during such an interrogation the suspect invokes her right to counsel, "the police must immediately cease questioning [her] until an attorney is present." *Davis v. United States*, 512 U.S. 452, 462 (1994) (citing *Edwards v. Arizona*, 451 U.S. 477, 484-85

(1981)). But to trigger the right to have an attorney present during questioning the invocation of the right must be unequivocal. *United States v. Hunter*, 708 F.3d 938, 943 (7th Cir. 2013); *United States v. Hampton*, 885 F.3d 1016, 1019 (7th Cir. 2018).

In determining whether a suspect's request for counsel is sufficiently clear, the Seventh Circuit "has found statements indicating a certain and present desire to consult with counsel sufficient to invoke a defendant's right to counsel." *Hunter*, 708 F.3d at 943; *see also Hampton*, 885 F.3d at 1020 (finding that an invocation requires a statement that "requests an action (or permission to act)"). "[A]n ambiguous or equivocal reference to an attorney" is not sufficient to halt questioning until the suspect has the aid of counsel. *Davis*, 512 U.S. at 459. When assessing whether a suspect's statement is an unequivocal invocation of her right to counsel, the court "consider[s] the circumstances in which the statement was made as well as the words employed." *United States v. Wysinger*, 683 F.3d 784, 793-94 (7th Cir. 2012).

Mahan argues that she unambiguously communicated a present desire for counsel when she asked, "Well, what, are you guys gonna go get me a lawyer?" (ECF No. 43 at 4.) "[B]y asking whether she'd be provided a lawyer, she was indicating that she wanted one present during her questioning," making her statement "the functional equivalent to 'Will you guys go get me a lawyer?'" (ECF No. 43 at 4.) She likens her question to, "Can you call my attorney?" "Can I call [a lawyer] now?" and "Can I have a lawyer?"—each of which the Seventh Circuit has found to be an unequivocal invocation

of the right to counsel. (ECF No. 43 at 4-5 (first quoting *United States v. Hunter*, 708 F.3d 938, 943-44 (7th Cir. 2013); then quoting *United States v. Wysinger*, 683 F.3d 784, 795-96 (7th Cir. 2012); and then quoting *United States v. Lee*, 413 F.3d 622, 625 (7th Cir. 2005)).)

The government argues that the wording of Mahan's question and the circumstances leading up to it suggest that she was not invoking her right to counsel but, rather, was asking a question about her right to counsel, which the Seventh Circuit has found insufficient to invoke the right. (ECF No. 45 at 6-7 (citing *United States v. Shabaz*, 579 F.3d 815, 818 (7th Cir. 2009) ("Am I going to be able to get an attorney?"); *Lord v. Duckworth*, 29 F.3d 1216, 1220-21 (7th Cir. 1994) ("I can't afford a lawyer but is there anyway I can get one?"); *United States v. Alt*, 58 F.4th 910, 916 (7th Cir. 2023) ("[D]o you have a lawyer here?"); *Wysinger*, 683 F.3d at 794-95 ("Do I need a lawyer before we start talking?")).)

Mahan's question, "Well, what, are you guys gonna go get me a lawyer?" is reasonably interpreted as a question about her right to counsel—specifically, the process by which she would receive a lawyer *if* she decided she wanted one present for questioning. Mahan's question itself supports this interpretation—it "is devoid of any action-oriented words—such as 'can'—that [the Seventh Circuit has] held sufficient to unequivocally invoke the right." *Alt*, 58 F.4th at 916 (internal citation omitted); *see also Hunter*, 708 F.3d at 944 ("The defendants' choice of the word 'can,' by definition, means that they were inquiring into their present ability to be 'able to' obtain a lawyer or to

6
Case 2:22-cr-00092-BHL   Filed 04/26/23   Page 6 of 12   Document 53

'have the opportunity or possibility to' obtain a lawyer."); *cf. Wysinger*, 683 F.3d at 795-96 (finding that "*Can* I call [a lawyer] now?" was sufficient to invoke the right to counsel) (emphasis added); *Lee*, 413 F.3d at 625 (finding that "*Can* I call [a lawyer] now?" was sufficient to invoke the right to counsel) (emphasis added). By her question, "[A]re you guys *gonna* go get me a lawyer?" she was asking how a lawyer would be obtained if she was to invoke the right; she was not expressing a certain and present desire for counsel.

Looking at the question in context supports the interpretation that Mahan was "inquiring into the *process* if [she] did request to speak to counsel." *See Alt*, 58 F.4th at 916 (emphasis in original). It was reasonable for Shubert to understand Mahan to be asking him *if*—hypothetically—she did want a lawyer at that moment, whether he (or Ojdana) would then go find a lawyer for her. Because Mahan's question was not a clear and unequivocal communication of a present desire for counsel—necessary to trigger the end of the interrogation—Shubert did not violate Mahan's right to counsel by proceeding with the interrogation. *See Davis*, 512 U.S. at 459 ("But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.") (emphasis in original).

### 3.2. Waiver

Mahan argues that, even if her question was not an unequivocal communication of a present desire for counsel, her statement should still be suppressed because she did not knowingly and intelligently waive her right to counsel.

When a defendant provides a custodial statement, "a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived [her] privilege against self-incrimination and [her] right to retained or appointed counsel." *Miranda*, 384 U.S. at 475. "[T]his 'heavy burden' is not more than the burden to establish waiver by a preponderance of the evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). In determining whether the defendant's waiver was made knowingly and intelligently, the court

> tak[es] into account the totality of the circumstances, …. [including] the defendant's background and conduct, the duration and conditions of the interview and detention, the physical and mental condition of the defendant, the attitude of the law enforcement officials, and whether law enforcement officers used coercive techniques, either psychological or physical.

*United States v. Shabaz*, 579 F.3d 815, 820 (7th Cir. 2009) (citing *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002)). While the record must show by a preponderance of the evidence "that an accused was offered counsel but intelligently and understandingly rejected the offer," *Miranda*, 384 U.S. at 475, the government need not "show that a waiver of *Miranda* rights was express." *Berghuis*, 560 U.S. at 384. "[A] waiver … may be implied through 'the defendant's silence, coupled with an understanding of his rights

and a course of conduct indicating waiver.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

After Mahan asked, "Well, what, are you guys gonna go get me a lawyer?" Shubert answered, "No." Mahan then exclaimed, "Ohh!" signaling that she now understood that there was no lawyer on standby in the event she decided to invoke her right to counsel. Mahan then, without hesitation, reached for the pen in Shubert's hand, quickly signed, placed the pen back in front of Shubert, and folded her hands as if to say, "Proceed." Before continuing, Shubert made eye contact with Mahan and clarified, "You have the right to one [a lawyer] if you want one, so just want to make that clear." Mahan nodded and, with her hands still folded on the table, gestured upwards with her thumbs to confirm that she understood.

Mahan argues that when Shubert responded, "No," to her question, "Well, what, are you guys gonna go get me a lawyer?" he "effectively denied her right to counsel." (ECF No. 43 at 7.) She argues that "[o]nly after Shubert denied her request did [she] sign the waiver form, having resigned herself to the fact that no lawyer would be provided." (ECF No. 43 at 8.) As for Shubert's later clarification, "[Y]ou are entitled to [a lawyer]," Mahan argues, "By then, [she] had already signed the form and acquiesced to the reality that she would not get a lawyer for this questioning." (ECF No. 43 at 8.)

The government responds, "Nothing about the way [Mahan's] *Miranda* rights were administered here suggests her waiver was not knowing and intelligent." (ECF

No. 45 at 11.) "The interview was conducted mid-morning on a weekday, directly following [her] appearance in Waukesha County Court"; Mahan "did not appear to be under the influence of drugs, alcohol, or medication"; "[s]he maintained eye contact with the agents throughout the interaction, and her responses to their statements and questions were appropriate and showed that she was following the conversation." (ECF No. 45 at 12.) The government points out that "[t]he only issue [Mahan] raises with the procedure is that when [she] asked to clarify whether … Shubert was going to get her an attorney, he told her he was not." (ECF No. 45 at 12.)

By accurately responding, "No," to Mahan's question about whether the agents were "gonna go get her a lawyer," Shubert did not effectively deny Mahan her the right to counsel. To the contrary, it appears that his answer clarified for Mahan the process by which she would receive counsel in the event she decided to invoke that right. Nothing about Mahan's reaction to Shubert's response—exclaiming, "Ohh!" immediately reaching for the pen in Shubert's hand, quickly signing her name, placing the pen down, and folding her hands—suggests that Mahan was confused about what she was doing. Rather, that flurry of decisive action suggests that she knew exactly what she was doing—waiving her right to counsel and consenting to move ahead with the interrogation. If Shubert at that point proceeded with the interrogation, the inference that Mahan had knowingly and intelligently waived her right to counsel would be supported by a preponderance of the evidence.

10
Case 2:22-cr-00092-BHL   Filed 04/26/23   Page 10 of 12   Document 53

But Shubert took another step to confirm that Mahan's waiver was knowing and intelligent—he explained that she had "the right to one [a lawyer] if you want one, so just want to make that clear." Mahan communicated her understanding by nodding and gesturing upwards with her thumbs. Shubert's clarification, coupled with Mahan's show of understanding, leaves little doubt that she knowingly and intelligently waived her right to counsel. Moreover, Mahan did not give any indication after Shubert's clarification that she wanted counsel or that she wanted to revoke her consent.

As such, the government has met its burden of proving by a preponderance of the evidence that Mahan's waiver of her right to counsel was knowing and intelligent and that Shubert was justified in moving forward with questioning.

**IT IS THEREFORE ORDERED** that the court's Order entered at ECF No. 47 be **vacated**, and **IT IS RECOMMENDED** that the government's motion for leave to dismiss count one of the indictment (ECF No. 46) be **granted** and that Mahan's motion to dismiss count one of the indictment (ECF No. 42) be **dismissed as moot**.

**IT IS FURTHER RECOMMENDED** that Mahan's motion to suppress statement (ECF No. 43) be **denied**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Crim. P. 59(b)(2), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of service of this recommendation or prior to the Final

Pretrial Conference, whichever is earlier. Failure to file a timely objection with the district court shall result in a waiver of your right to appeal.

Dated at Milwaukee, Wisconsin this 26th day of April, 2023.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge