UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

          Plaintiff,

v.                                            Case No. 22-cr-0092

COLETTE A. MAHAN,

          Defendant.

## ORDER

Defendant Colette Mahan challenges Magistrate Judge William E. Duffin's Report and Recommendation that Mahan's motion to suppress a custodial statement she gave following her May 5, 2022 arrest be denied.[1] Because the magistrate judge's analysis is correct, the Court will adopt Judge Duffin's recommendation and deny the motion to suppress.

### BACKGROUND

On April 28, 2022, a grand jury returned a ten-count indictment against Mahan charging her with one count of Interstate Travel and Use of Facilities in Interstate Commerce to Carry On a Prostitution Business in violation of 18 U.S.C. §1952(a)(3); one count of Sex Trafficking of a Child in violation of 18 U.S.C. §1591(a)(1) and §1591(b)(2); four counts of Sex Trafficking by Force, Fraud, or Coercion in violation of 18 U.S.C. §1591(a)(1) and §1591(b)(1); and four counts of Interstate Transportation for Prostitution in violation of 18 U.S.C. §2421(a). (ECF No. 1.) On August 11, 2022, a grand jury returned a superseding indictment, adding one count of Sex Trafficking of a Child by Force, Fraud, or Coercion in violation of 18 U.S.C. §§1591(a)(1), (b)(1), (b)(2), and (c). (ECF No. 26 at 11.)

Mahan was arrested on May 5, 2022. (ECF No. 53 at 2.) Upon her arrest, she was taken to a conference room at the Waukesha County Sheriff's Office and interviewed by FBI Special

---

[1] On March 9, 2023, Mahan filed a motion to dismiss count one of the indictment. (ECF No. 42.) On March 29, 2023, the government moved for leave to dismiss count one without prejudice pursuant to Federal Rule of Criminal Procedure 48(a). (ECF No. 46.) Judge Duffin recommended that the government's motion be granted and Mahan's motion denied as moot. (ECF No. 53.) The parties have not objected to this recommendation and, having reviewed the motion, the Court will therefore adopt it.

Agent Blake Shubert and Task Force Officer Anna Ojdana. (*Id.*) Law enforcement officers recorded the interview by both audio and video means. (ECF No. 49.) After the law enforcement officers introduced themselves, Agent Shubert informed Mahan that he was going to advise her of her rights. (*Id.* at 25:47.) Shubert read Mahan her *Miranda* rights from a standardized form and asked if she consented to talk with them. (*Id.* at 26:42-27:12.) After he finished reading, Shubert specifically asked Mahan, "so, do you give consent to talk with us?" (*Id.* at 27:08.) Mahan responded, "I, I guess so" and slightly laughed. (*Id.* at 27:12.) Shubert replied "ok" and placed the *Miranda* form in front of Mahan. (*Id.* at 27:17.) Shubert then stated, "so if you do, you have to just read that for me and then sign." (*Id.* at 27:21.) Mahan paused to read the form and asked, "well, what, are you guys gonna go get me a lawyer?"[2] (*Id.* at 27:20-24.) Shubert responded, "no." (*Id.* at 27:25.) Mahan responded, "oh," reached for the pen in Shubert's hand, signed the form, placed the pen back in front of Shubert, and clasped her hands in front of her on the table. (*Id.* at 27:35-27:38.) Shubert stated, "you have the right to one [a lawyer] if you want one, so just want to make that clear." (*Id.* at 27:35-27:38.) Mahan nodded and the interview began. (*Id.* at 27:42.) The interview lasted for approximately ninety minutes. (*Id*. at 27:42–2:06:20.)

On March 9, 2023, Mahan filed a motion to suppress the custodial statement she gave to law enforcement officers after her arrest. (ECF No. 42.) On April 26, 2023, Judge Duffin issued a Report and Recommendation that Mahan's motion to suppress be denied. (ECF Nos. 53 & 54.) On May 10, 2023, Mahan timely objected to Judge Duffin's Report and Recommendation. (ECF No. 55.) The government filed a response on May 16, 2023. (ECF No. 56.) Mahan opted not to file a reply.

## STANDARD OF REVIEW

When reviewing a magistrate judge's recommendation, the district judge must review *de novo* the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. §636(b)(1); Fed. R. Crim. P. 59(b)(2), (3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. §636(b)(1). When reviewing a magistrate judge's order addressing a non-dispositive pretrial motion, the Court will

---

[2] Judge Duffin noted the precise wording of Mahan's question is ambiguous. To avoid the need for an evidentiary hearing and as found by Judge Duffin, the Court will also assume Mahan's version of what she said is correct for purposes of the present motion. (*See* ECF No. 53 at 3 n.2; ECF No. 43 at 1.)

only set aside that portion of the order that is found to be clearly erroneous or contrary to law. *See* 28 U.S.C. §636(b)(1)(A); Fed. R. Crim P. 59(a).

## ANALYSIS

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court announced a set of "concrete constitutional guidelines" to effectuate that protection in the context of custodial interrogations. 384 U.S. 436, 442 (1966). Because of the "inherent compulsions of the interrogation process," *Miranda* requires that, "if a person in custody is to be subjected to interrogation, [s]he must first be informed in clear and unequivocal terms" of her constitutional rights. *Id.* at 467-69. Law enforcement personnel are obliged to inform an accused who is subject to custodial interrogation that she has the right to consult an attorney and to have an attorney present during questioning. *Id.* at 471-72. If an accused invokes her *Miranda* rights, she "is not subject to further interrogation by the authorities until counsel has been made available … unless the accused [her]self initiates further communication, exchanges, or conversations with police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981).

**I.      Mahan Did Not Unequivocally Invoke Her Right to Counsel.**

The dispositive issue is whether Mahan unequivocally invoked her right to counsel when she asked, "well, what, are you guys gonna go get me a lawyer?" after Shubert read her *Miranda* rights. *See Miranda*, 384 U.S. at 467-69. If Mahan invoked her right to counsel, she was entitled to the assistance of counsel during the custodial interrogation or the interrogation should have ceased immediately until an attorney was present. *See Davis v. United States*, 512 U.S. 452, 461-62 (1994) (citation omitted).

Whether an accused has clearly invoked his or her right to counsel is an objective inquiry. The law recognizes that the burden is on the accused to make a "clear and unambiguous assertion of [her] right to counsel to stop questioning." *United States v Lee*, 413 F.3d 622, 625 (7th Cir. 2005). If the accused merely makes an ambiguous reference to an attorney "that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel," law enforcement may proceed with their questioning. *Davis*, 512 U.S. at 459 (italics in original). Law enforcement officers are not under any obligation to clarify ambiguous statements made by an accused. *United States v. Muhammad*, 120 F.3d 688, 698 (7th Cir. 1997).

If a suspect makes an inculpatory statement after law enforcement offices have violated the requirements of *Miranda*, such statement cannot be used against her at trial. *Id.*

In this case, after being read her *Miranda* rights from a standardized form, Mahan paused to read the form and asked "well, what, are you guys gonna go get me a lawyer?" (ECF No. 49 at 27:20-24.) The law enforcement officer responded, "no." (*Id.* at 27:25.) Mahan responded, "oh," calmly reached for the pen in the officer's hand, and signed the form. She then folded her hands in front of her on the table. (*Id.* at 27:35-27:38.) Shubert clarified, "you have the right to one [a lawyer] if you want one, so just want to make that clear." (*Id.* at 27:35-27:38.) Mahan nodded, indicating she understood.

Mahan argues that asking, "well, what, are you guys gonna go get me a lawyer?" was sufficient to unequivocally invoke her right to counsel and therefore the failure to end questioning requires suppression of her statement. (ECF No. 55 at 1.) Mahan likens her statement to declarations made by other defendants in situations the Seventh Circuit has found sufficient to invoke the right to counsel. (ECF No. 55 at 2 (citing *United States v. Hunter*, 708 F.3d 938, 943-44 (7th Cir. 2013); *United States v. Wysinger*, 683 F.3d 784, 795-96 (7th Cir. 2012); *Lee*, 413 F.3d at 625).) In those cases, the defendants specifically requested counsel in similar ways: "Can you call my attorney?", *Hunter*, 708 F.3d at 943-44, "Can I call [a lawyer] now?", *Wysinger*, 683 F.3d at 795-96, and "Can I have a lawyer?", *Lee,* 413 F.3d at 625. In all three cases, the Seventh Circuit concluded the defendants had unequivocally invoked their right to counsel.

The government argues that the key to the analysis of whether an individual clearly invoked the right to counsel is whether the question included "action-oriented words" such as "can" that indicate a request. (ECF No. 56 at 6); *United States v. Alt*, 58 F.4th 910, 916 (7th Cir. 2023). Judge Duffin found that Mahan's question, "well, what, are you guys gonna go get me a lawyer?" is reasonably interpreted as a question about her right to counsel, "specifically, the process by which she would receive a lawyer if she decided she wanted one present for questioning." (ECF No. 53 at 6.) Accordingly, Shubert reasonably understood Mahan to be asking him if – hypothetically – she did want a lawyer, whether Shubert (or Odjana) would go find a lawyer for her. (*Id.*)

The Court agrees with Judge Duffin's analysis. In response to Mahan's inquiry, Office Shubert said "no," but reiterated that Mahan had the right to one if she wanted one. But asking "are you gonna get me a lawyer" is substantively different than asking "can I have a lawyer?"

Mahan's question was at best an ambiguous query as to whether Shubert was going to provide counsel and not a clear assertion of her right to counsel. As noted in *Davis*, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not [she] actually wants an attorney." 512 U.S. at 461. Shubert attempted this by responding that Mahan had the right to a lawyer if she wanted one.

The Seventh Circuit's recent decision in *Alt* is instructive. In *Alt*, officers informed a defendant of his right to counsel and then, after they began questioning him about an alleged attempt to entice a minor, he asked, "real quick, on the, uh, appointed lawyer, do you have a lawyer here?" *Alt*, 58 F.4th at 916. The Seventh Circuit found that Alt did not make an unambiguous request for counsel but "merely inquir[ed] into the *process* if he did request to speak to counsel." *Id.* (emphasis in original). His statement suggested that he "was still undecided about whether he wanted a lawyer" and "[a]t best . . . indicated that he *might* want to speak to counsel." *Id.* (emphasis in original). The Seventh Circuit found this insufficient to unequivocally invoke the right to counsel. *Id.*

Mahan's question is similarly "devoid of any action-oriented words—such as 'can'—that [the Seventh Circuit has] held sufficient to unequivocally invoke the right." *Id.* at 916. Mahan was "inquiring into the *process* if [she] did request to speak to counsel." *Id.* (emphasis in original). Consequently, it was reasonable for Shubert to understand Mahan to be asking him if she did want a lawyer, whether he would go find a lawyer for her. Shubert answered Mahan's question with a "no" but also followed up with "you have the right to one [a lawyer] if you want one, so just want to make that clear." (Ex A. 27:24-27:38.) Because Mahan's question was not a clear and unequivocal communication of a present desire for an attorney necessary to trigger the end of the interrogation, Shubert did not violate Mahan's right to counsel by proceeding with the interrogation. *See Davis*, 512 U.S. at 459 ("But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.") (emphasis in original).

## II. Mahan Knowingly and Intelligently Waived Her Right to Counsel.

Mahan also objects to the magistrate judge's finding that she intelligently waived her right to counsel. (ECF No. 55 at 3.) She argues that her question demonstrated that she did not understand how to exercise her right to counsel, and the government did not meet its burden of

proving that Mahan's waiver was made intelligently. (*Id.*) The government bears the burden of proving that any waiver of a defendant's constitutional rights before making a custodial statement was done voluntarily, knowingly, and intelligently. *Miranda*, 384 U.S. at 475. The burden to establish waiver is by a preponderance of the evidence. *See Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)). In determining whether the defendant's waiver was knowing and intelligently made, the Court takes "into account the totality of the circumstances" which includes, the defendant's background, conduct, physical and mental condition, the interview's duration and conditions, law enforcement's attitude, and whether they "used coercive techniques, either psychological or physical." *United States v. Shabaz*, 579 F.3d 815, 820 (7th Cir. 2009) (citing *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002)). A waiver can be inferred from "the defendant's silence, coupled with an understanding of [her] rights and course of conduct indicating a waiver." *Thompkins*, 560 U.S at 384 (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).

  The government contends "[n]othing about the way [Mahan's] *Miranda* rights were administered here suggests that her waiver was not knowing and intelligent." (ECF No. 56 at 11.) The government notes that the interview was conducted mid-morning, on a weekday, following Mahan's appearance in Waukesha County Court. (*Id.* at 11-12.) Mahan is a native English speaker, who did not appear to be under the influence of drugs, alcohol, or medication. (*Id.* at 12.) She sat calmly in her chair, with her hands clasped together, maintained eye contact with the law enforcement officers, and spoke in a normal tone of voice. (*Id.*) Shubert read the *Miranda* rights to her verbatim. (*Id.*) Throughout the interview, the officers treated Mahan courteously and with respect. When Mahan inquired as to whether Shubert was going to get her a lawyer, he told her "no." Mahan responded "oh," and Shubert made clear that if Mahan wanted a lawyer, she had the right to one. Mahan did not ask any further questions or probe the subject further. Instead, she engaged in decisive actions by taking the pen from Shubert, reviewing the form and signing the form, thereby giving consent to move forward with the questioning. Mahan faults Shubert for failing to ask "do you want a lawyer?" (ECF No. 43 at 7.) The law did not require Shubert to ask that question and the defendant does not contend otherwise. He did reiterate that Mahan had the right to an attorney if she wanted one. Mahan then proceeded to sign the waiver and allowed the interview to commence. The government has met its burden of proving by a preponderance of the evidence that Mahan's waiver of her right to counsel was knowing and intelligent. Accordingly,

law enforcement was justified in moving forward with the interview and the statements made during that interview will not be suppressed.

## CONCLUSION

After a *de novo* review of Magistrate Judge Duffin's report and recommendation, ECF Nos. 53 & 54, the Court overrules Mahan's objections.

Accordingly, **IT IS ORDERED** that Defendant's Motion to Suppress, ECF No. 43, is **DENIED**.

**IT IS FURTHER ORDERED** that Magistrate Judge Duffin's Order, ECF Nos. 53 & 54, granting the government's motion to dismiss count one of the indictment, ECF No. 46, and dismissing Defendant's motion to dismiss count one, ECF No. 42, as moot is **ADOPTED**.

Dated at Milwaukee, Wisconsin on June 13, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge